Jones, Judge:
On August 19, 1964, the claimant, S. J. Groves & Sons Company, was awarded a contract by the respondent, State Road Commission of West Virginia, to construct approximately six miles of Interstate Route No. 81 near Pikeside in Berkeley County. The work was undertaken and completed within the specified time and a settlement was made, subject to the claimant’s right to assert this claim. The claim, in the total amount of $40,756.02, is made up of three items, involving unclassified excavation, Portland Cement concrete pavement and borrow excavation.
With reference to the claim for unclassified excavation not paid for, the respondent’s answer averred that the plans and specifications did not require the contractor to make a rock under cut in the median area, and that it therefore was unnecessary for the State Road Commission to keep any records in that connection. However, Section 2.2.3. (a) (4) of the State Road Commission Standard Specifications provides as follows:
“In roadway cuts where ledges of rock or hard shale, boulders, or other solid formations are encountered at or near grade elevations, grading shall be carried to a depth of twelve inches below the subgrade elevation for the entire width of the road bed including the median.”
And the typical cross section which is a part of the project plans shows a twelve-inch undercut in the median when rock is encountered. The claimant’s drilling and blasting super *231 intendent, grading superintendent, and field engineer all testified that this work was done, and the field engineer, who is a graduate geologist, further testified that, using planned cross sections, he calculated the quantity of rock undercut in the median strip to be 6,687 cubic yards. At the contract rate of $1.38 per cubic yard of unclassified excavation, the amount claimed for this item is $9,228.06. The State Road Commission paid for 730,926 cubic yards of rock undercut within the roadway, without field measurements, employing planned cross sections for the purpose. At one point during the hearing of this case, counsel for the State Road Commission stated that the claimant’s evidence pertaining to this item of damage was the “*** type of information we had asked for ***” and indicated that a stipulation might be possible. No stipulation was forthcoming, but it appears to the Court that the evidence on this part of the claim preponderates in favor of the claimant.
The State Road Commission denied payment for 76.67 square yards of Portland Cement concrete pavement at $5.91 per square yard, a total of $453.12. The deduction was based on one core sample which measured 8V2 inches instead of the specified 9 inches in thickness. Under the Standard Specifications, where there is a deficiency of V2 inch, the contractor may be required to remove the deficient area and replace the same with a slab of satisfactory quality and thickness, or the contractor will be allowed the choice of leaving the defective slab in place without receiving any compensation therefor. If the contractor believes that the cores and measurements taken are insufficient to fairly indicate the actual thickness of the pavement, he may request additional cores and measurements, the cost of which shall be paid by the party not prevailing. In this case, the claimant had no knowledge of the alleged deficiency until negotiations were underway on the final estimate. The claimant then requested an opportunity to measure the core sample and when a representative went to the place where the core had been stored, he found that it had been destroyed in a strength test. The claimant also asked permission to take its own corings, but was refused. The State Road Commission elected to leave the defective slab in place and assuming that its measurement was accurate, payment was properly withheld. However, under the Specifications, the claimant had the right to contest the measurement and it was given no opportunity to do so. The State *232 Road Commission having accepted the pavement under these circumstances, we are of opinion that the claimant should be compensated at the contract price in the total sum of $453.12.
No borrow excavation was contemplated in the original contract, but during the course of construction it was found that additional material outside the right-of-way would be needed and a supplemental agreement was entered into, providing for borrow material at $1.38 per cubic yard. It is agreed that 113, 272 cubic yards of borrow material were incorporated in the project and that the claimant has been paid for 87,443 cubic yards. The claimant received no payment for the remaining 25,829 cubic yards. It is the State Road Commission’s contention that the claimant wasted 21,135 cubic yards of suitable material which should be deducted from the borrow excavation. This quantity was derived from State Road Commission measurements of three waste pits and the measurements are not contested by the claimant. The claimant admits that it wasted 1,449 cubic yards of boulders and 9,862 cubic yards of wet material which could have been used for embankment on the project. The State Road Commission agrees that it directed the claimant to waste 1,689 cubic yards of unsuitable material, leaving 15,535 cubic yards in controversy. The claimant adduced testimony to show that the 15,535 cubic yards of waste pit material is made up of 5,000 cubic yards of base stone loss, 1,648 cubic yards of concrete paving loss, 3,226 cubic yards of batch plant area stripping, and 6,261 cubic yards of miscellaneous debris.
The State Road Commission’s project engineer did not dispute the claimant’s contention that approximately 5,000 cubic yards of base stone was delivered on the job and not paid for. However, he contended that the material was not taken to the waste pits but was literally wasted on the highway shoulders and median and used on private subdivision roads nearby. The claimant gave testimony that this quantity of stone was used to construct crossovers for batch trucks and, having been contaminated, was removed to the waste pits. Photographs produced by the State Road Commission show substantial quantities of excess stone in the median. The charge that some of this stone was used on other roads in the area was not substantiated. The Court recognizes a preponder- *233 anee of the evidence in favor of the claimant insofar as a portion of the base stone waste is concerned but not as to the quantity claimed. Further recognizing its inability to ascertain a quantity certain in this regard, the Court is of opinion to allow one-half of the quantity claimed, or 2,500 cubic yards.
A witness for the claimant testified that the normal paving loss, concrete batched but not paid for, was 7%, and this experience is not contested by the State Road Commission. The claimant estimated the 3%- of the lost concrete may have wound up in the base course, and that 4% or 1,648 cubic yards, went to the waste pits. However, the State Road Commission project engineer testified that random corings showed the pavement to have an average depth of 9.4 inches instead of the 9 inch thickness called for in the contract, an overrun of 4.4%, which more than accounts for the claimed loss of 4%. Proof of this item by the claimant is inconclusive and the Court is constrained to disallow this portion of the claim.
The claimant’s batch plant area was acquired under a contract with the owner of the land which provided that the topsoil should be saved and at the conclusion of the project, a 6 inch layer of earth, presumably contaminated by the batching operations, should be removed before the topsoil was replaced. The 6 inch strip from 4 acres of land was calculated to be 3,226 cubic yards. According to the claimant’s evidence, this quantity was hauled to the waste pits. There is no real contradiction of claimant’s testimony in this regard and the Court is of opinion to give the claimant credit for the quantity asserted.
The claimant further contends that it wasted miscellaneous materials such as stone fences, a concrete platform, a blockhouse, debris from a tire burning site, an automobile, bands and boxes from seeding operations, form lumber and root mat, and arrived at a quantity of 6,261 cubic yards by deducting the other waste items from the 21,135 cubic yards of material in the three waste pits. Proof of the waste of these miscellaneous materials is weak and unconvincing and this item of damage is disallowed.
The State Road Commission deleted from payment 6,383 cubic yards of borrow material for overembankment. This deletion was based on calculations of a Staff Engineer for the *234 Commission, working with a representative of the claimant. The State Road Commission Engineer testified that if he had adhered strictly to the “pay” or “neat” lines, “*** the deduction would have been 16,000 plus instead of 6,000.” The Court believes that the claimant received the benefit of any doubt with regard to these computations and in the Court’s opinion the deduction for overembankment was proper.
The claimant concedes that 3,311 cubic yards of borrow excavation should be deducted from the 25,829 cubic yards not paid for, and claims that it is entitled to payment for 22,518 cubic yards at $1.38 per yard, a total of $31,074.84. Summarizing our conclusions with regard to the several items in controversy, the Court is of opinion to require further deductions as follows: 2,500 cubic yards of base stone loss; 1,648 cubic yards of concrete paving loss; 6,261 cubic yards of miscellaneous waste; and 6,383 cubic yards of overembankment; a total of 16,792 cubic yards; and the Court will allow payment for the remaining 5,726 cubic yards at $1.38 per yard, a total of $7,901.88.
For the reasons hereinabove set forth, the Court is of opinion that the claimant should recover the following: $9,288.06 for rock undercut in the median; $453.12 for Portland Cement concrete pavement; and $7,901.88 for borrow excavation; a total of $17,583.06; that the allowance of such amount is just and equitable and in good conscience should be paid; and, therefore, it is the Court’s judgment that the claimant, S. J. Groves & Sons Company, should be and is hereby awarded the sum of $17,583.06.